# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| **STEVEN WESTE** | § | |
| | § | |
| **v.** | § | |
| | § | **SA-12-CV-919-XR** |
| **UNITED STATES OF AMERICA** | § | **SA-07-CR-323-XR** |

## ORDER

On this day came on to be considered Weste's Motion to Vacate Sentence pursuant to 28 U.S.C. §2255 (docket no. 180), the Magistrate Judge's Memorandum and Recommendation (docket no. 192), and Weste's objections (docket no. 194).

## Background

Steven Weste was a history teacher at Judson High School in San Antonio, Texas. Prior to her high school graduation, Weste took one of his former students, Amanda Stewart, on a Saturday excursion to Enchanted Rock State Natural Area in Fredericksburg, Texas. Thereafter, soon after her graduation in May 2005 they began a formal dating relationship. Weste was approximately 29 years old. Prior to dating Weste, Ms. Stewart was dating Ricky Ramirez, a fellow high school student. Ms. Stewart's sister (Laura) and Laura's then boyfriend (Brian Collier) disapproved of Amanda dating her former, and much older, teacher. Around June of 2006, Amanda ended the relationship with Weste.

The investigation into this case began on November 5, 2006, when a supervisor with the U.S. Department of Homeland Security, Customs and Border Protection Division, received an email message from a person using the email address chalcedony1@hotmailcom. The email alleged that Brian Collier, a student in the Border Patrol Academy, had molested a young child. DHS agents determined that the accusations against Mr. Collier were not true, and they began an

investigation into the origin and author of the email.  Subsequently, Amanda, her family, and others received a series of emails containing graphically-violent threats and harassing statements over a two-year period.  Although the emails purported to be from Amanda's mother and Ricky Ramirez, the Government presented evidence at trial demonstrating that the IP address was linked to Weste when the offending emails were sent.

The jury also heard testimony from Amanda Stewart that on June 5, 2006, Weste told her that he had received a graphic email detailing Amanda being raped and murdered.  Weste forwarded the email to Ms. Stewart.  Ms. Stewart asked Weste to accompany her to the police.  Weste refused claiming he had talked to his grandfather's lawyer and was advised that it would be libelous if the email became public.  Later Ms. Stewart attempted to retrieve and print the email, only to discover that Weste deleted the email from her email account and his own.  Weste admitted to deleting the emails, claiming that they made him angry.  Ms. Stewart had much earlier provided Weste with her email passwords.  When Ms. Stewart began attending college at William & Mary, she provided Weste with her email address.  Threatening emails thereafter began to arrive at her William & Mary email address.  Disturbing emails were also sent to other female students living at Amanda's dorm.

In addition, evidence was presented at trial that law enforcement officers interviewed Weste, and that same evening Weste purchased "Evidence Eliminator" in an attempt to "wipe" his laptop computer.  The laptop was seized pursuant to a warrant, and later forensic evidence showed that the laptop was used to compose some of the threatening messages.

A jury found Weste guilty of fifteen counts, including: five counts of Making False Statements to a Federal Agency, 18 U.S.C. § 1001(a)(2), one count of Concealing a Material Fact in a Matter within the Jurisdiction of a Federal agency, 18 U.S.C. § 1001(a)(1), and nine

counts of Transmitting Threats to Kill Others, 18 U.S.C. § 875(c). This court sentenced Weste to 180 months of imprisonment.  An appeal was filed and the Fifth Circuit affirmed the conviction and sentence.  *See U.S. v. Weste*, 419 Fed. Appx. 507 (5th Cir. March 23, 2011), *cert. denied*, 132 S. Ct. 119 (2011).  Weste now seeks to vacate the sentence pursuant to 28 U.S.C. § 2255 claiming he received ineffective assistance of counsel.  The motion to vacate the sentence was referred to a Magistrate Judge.   The Magistrate Judge filed a Memorandum and Recommendation (docket no. 192) recommending that the motion be denied.  Weste has filed objections to the Magistrate Judge's Recommendation.

After careful consideration and de novo review, the Court hereby approves the Memorandum and Recommendation of the United States Magistrate Judge and adopts it as its own opinion.

Where no party has objected to the Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review of it.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made.").  In such cases, the Court need only review the Report and Recommendation and determine whether it is either clearly erroneous or contrary to law.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  On the other hand, any Report or Recommendation that is objected to requires de novo review.  Such a review means that the Court will examine the entire record and will make an independent assessment of the law.  The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature.  *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).   Given that Weste has objected to the entire Memorandum and Recommendation, the Court has conducted a de novo review.

**Analysis**

To prevail on an ineffective assistance of counsel claim, a movant must show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 697. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). Further, "[a] court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one." *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).  "The likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, —–U.S. —–, —–, 131 S.Ct. 770, 792 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, —– U.S. —–, —–, 131 S.Ct. 1388, 1403 (2011) (*quoting Strickland*, 466 U.S. at 686)). Judicial scrutiny of this type of claim must be highly deferential and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

    1.  Failing to use a computer expert for trial preparation

Weste complains that his trial defense counsel[1] failed to use a computer expert for trial preparation.  Weste's trial counsel presented a defense that Weste did not send any threatening emails, and if such emails were sent they were likely authored and sent by Amanda's mother (Celia Phillips) or Ricky Ramirez or someone else.  The jury chose to reject that defense.  The jury heard evidence that at the time many of these emails were sent, Ramirez was a student at the Massachusetts Institute of Technology in Cambridge, Massachusetts (some 2,000 miles away from San Antonio, Texas).

Weste's trial defense team initially hired David Gallant, a forensics computer expert, to examine the hard drive of Weste's laptop.  His analysis concluded that there was no evidence that the laptop had been contaminated with any viruses, programs or Trojan software that would allow the computer to be taken over by an outsider.  Also, during his analysis of the laptop, Gallant discovered evidence of child pornography in the laptop's cache files.  Gallant declined further work in the case.  Trial counsel stated that he did not hire a replacement for Gallant because it was likely that another computer expert would also discover the cache files.  Trial counsel stated he discussed with Weste his recommendation that another expert not be hired because that expert could be later questioned about the cache files and if the Government became aware of the cache files, Weste could potentially be indicted for possession of child pornography.  Weste did not dispute the existence of the child pornography to his trial counsel and agreed with the recommendation not to retain another expert.[2]

---

[1] At trial Weste was represented by three attorneys.  In his petition he does not distinguish his complaints against the three attorneys.  In this Order the Court refers to trial defense counsel in the collective sense.

[2] In the objections to the Magistrate Judge's Recommendation, Weste's habeas counsel argue that the Government's experts (James Beard and Nicole Beebe) performed extensive investigations and "failed to uncover evidence of child porn."  Habeas counsel also argues that "Weste looks with suspicion on the claim that [David Gallant] uncovered child pornography…."  No sworn declaration or affidavit is provided by Weste.  It should be noted that the Government was aware that Weste's laptop contained some evidence of pornography, and this was discussed in an April 9, 2009 pre-trial hearing.

Weste fails to show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.

2.   Failure to call an expert regarding Weste's home router

Weste used a Linksys WRT54G wireless router to access the internet in his home.  He argues that anyone could have driven by his house and utilized his unsecured wireless internet service to send the threatening emails.  A third person acting in this manner would have had any emails reflect Weste's IP address as the sending address.  Weste claims that his trial counsel were ineffective in failing to hire an expert to present this theory to the jury.  The central flaw in this argument is that many of the threatening emails were sent from IP address 208.54.95.1, an address registered to T-Mobile hotspots, not the IP address used by Weste at his home.  Other emails were sent from Weste's neighbor's unsecured router.  Other emails were sent from a hotel in Chattanooga, where Weste and his family were staying.

Weste's secondary argument appears to be that an unsecured router "would have been the obvious way for an outsider to take over [his] computer" and "plant anything on it."[3]  As stated above, however, the computer forensics expert initially retained by defense counsel analyzed Weste's laptop and concluded that there was no evidence that the laptop had been contaminated with any viruses, programs or Trojan software that would allow the computer to be taken over by an outsider.  Although Weste's counsel possessed a mirror image of the laptop hard drive, he

---

[3] Weste also complains that trial defense counsel was also ineffective by not retaining an expert to testify how "spoofing" occurs.  Spoofed or forged email uses a false or invalid email header to describe from whom it came. *See* http://www.symantec.com/business/support/index?page=content&id=TECH82284.

provides no evidence to support his theory that the laptop was "hacked" and "taken over."  Bob Esquenzai, allegedly a computer forensics expert[4], provides no supporting evidence.

Weste fails to show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.

3.  Failure to retain an expert to impeach Douglas Latimer

As stated above, many of the threatening emails were sent from IP address 208.54.95.1, an address registered to T-Mobile hotspots.  The Government issued a subpoena to T-Mobile and sought data which would connect T-Mobile prepaid cards and their use.  Douglas Latimer, manager of the T-Mobile HotSpot data warehouse development team, developed an initial program in an effort to compile material responsive to the subpoena.  In a pre-trial deposition, he testified that his program was experimental and contained "bugs and glitches."  During the deposition, defense trial counsel was able to secure admissions from Latimer that the program was experimental and contained "bugs and glitches."  Prior to trial, Latimer was able to improve his program and connect the prepaid cards to use at various Starbucks locations.   This information was provided to defense counsel prior to trial.

Weste now argues that his trial counsel was ineffective in failing to retain an expert to assist in deposing Latimer, and failing to adequately cross examine and impeach Latimer at trial. In response to this habeas petition, defense trial counsel stated that Latimer was degreed in computer science, very experienced in managing T-Mobile's electronic data warehouse, and eager to defend his work.  Trial counsel stated it was his trial strategy not to engage in aggressive questioning because he did not want the Government to emphasize through Latimer the 150+

---

[4] Mr. Esquenzai has been retained by habeas counsel.  No resume or curriculum vitae are provided to establish his expertise.

log-ins at Starbucks stores, the 21 purchases of prepaid cards, and to explain in detail why T-Mobile's data was accurate.[5]

As stated above, judicial scrutiny of habeas claims must be highly deferential and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Weste fails to overcome this strong presumption. In addition, the "likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, ─── U.S. ───, ───, 131 S.Ct. 770, 792 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, ─── U.S. ───, ───, 131 S.Ct. 1388, 1403 (2011) (*quoting Strickland*, 466 U.S. at 686)).

Based on the evidence presented at trial (including but not limited to cell phone records that established Weste's whereabouts, financial transactions indicating the withdrawal of cash just prior to the purchase of prepaid cards, remnants of text located on the laptop that matched the text of threatening emails, and the purchase of "Evidence Eliminator" by credit card the evening law enforcement officers questioned Weste), Weste fails to prove that any alleged error made by his trial defense counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

4. Failure to accompany Weste to the polygraph examination

After he was indicted, the original Assistant U.S. Attorney assigned to this case and Defendant's counsel agreed to allow Weste to submit to a polygraph examination. Defense counsel did not accompany Weste to the Secret Service agents' office because defense counsel

---

[5] Weste also complains that trial defense counsel failed to utilize an expert to review the data compilation prepared by Mr. Latimer. Weste, however, fails to present any evidence that the T-Mobile data compiled by Mr. Latimer was not accurate.

was not going to be allowed into the examination room.   After the exam was completed, the Secret Service agent administering the exam informed Weste that he had failed the exam and then proceeded to obtain a confession.  Defense counsel immediately thereafter filed a motion to suppress and motion to dismiss.  The Court granted the motion to suppress inasmuch as neither the Assistant U.S. Attorney nor defense counsel anticipated a debriefing and confession to be conducted as part of a polygraph examination.  The confession was never tendered into evidence at trial.   Apparently habeas counsel raises this issue to demonstrate trial counsel's "shortcomings."   Even if counsel's performance fell below an objective standard of reasonableness[6], there is no reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different.  The confession was not admitted during the trial.  Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance.

     5.   Failure to interview witnesses and present character evidence

Weste argues that he and his family members provided their trial defense counsel a listing of 18 character witnesses.  He now argues that defense trial counsel failed to interview many of them and failed to utilize as witnesses many of them.  Defense counsel states that he and/or co-counsel interviewed and prepared Sue Arrendondo, Sharon Fuery, Timothy Weste, and Deborah Weste.   Defense counsel stated that in his experience judges and juries grow weary of repetitious, cumulative testimony and accordingly they presented only a select number of character witnesses.   They further screened character witnesses to avoid the possibility that cross-examination of the character witness could "backfire."   Defense counsel stated that each

---

[6] The Court makes no finding that counsel's performance actually fell below an objective standard of reasonableness. Prior to the examination, counsel instructed Weste not to talk to anyone and only answer the questions posed during the exam.  Counsel did not attend the examination because he was not going to be allowed into the examination room.  He immediately filed the appropriate motions upon learning that his client had confessed.  That said, this Court does not condone the practice of defense counsel not attending government or probation officer interviews of their client.

trial day they consulted with Weste and family members in deciding who to call as a character witness.

It appears that many of the individuals who were not called were members of Weste's church family.  In light of the inappropriate student-teacher relationship and age difference between Weste and Amanda and the discovery of some type of pornography on Weste's laptop, it was not unreasonable for trial defense counsel to refrain from calling these individuals as witnesses.  They likely would have been cross examined by the Government and they likely would have provided some responses unfavorable to Weste.  Trial defense counsel elicited favorable testimony from Ms. Fuery, who testified that Weste was a popular, effective teacher. Habeas counsel and Weste now complain that trial defense counsel failed to ask Ms. Fuery questions attacking Amanda's mother as irrational and angry.  Trial defense counsel were not unreasonable in deciding that attacking the victim's mother would not prove productive.  Habeas counsel also attack trial defense counsel for not questioning Weste's brother, Timothy, about Weste's alleged limited computer skills.  Timothy Weste repeatedly attempted to testify that his brother's computer was hacked, when he lacked any personal knowledge of this alleged fact and merely was repeating what Weste told him.  Timothy Weste was repeatedly admonished by the Court that he could not inject hearsay into his testimony.  At other points during the trial he was escorted out of the courtroom by a courtroom security officer because of his disruptive behavior. Otherwise, with regard to Weste's complaint that trial defense counsel did not interview many of the proposed character witnesses, Weste fails to demonstrate that any of them could have provided any personal knowledge of any relevant facts helpful to his defense.

Weste fails to show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.

6.   Trial counsel's lack of professionalism during trial

At one point in a long, extensive trial, the Court privately admonished defense counsel at the bench that their "snickering" during the testimony of Amanda was inappropriate.  Weste now complains that "this is just another example of defense counsel's attitude toward this case."  The "snickering" was inappropriate and is not condoned by the Court.  This isolated occurrence, however, fails to show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.

7.   Requesting a trial continuance when the Government was allegedly not ready for trial

Weste complains that trial defense counsel was ineffective for requesting and/or agreeing to a continuance of the trial at a February 18, 2009 pretrial conference.   A jury trial was scheduled to commence on March 16, 2009.  Weste argues that his trial defense counsel was ineffective by requesting and/or agreeing to a trial continuance because at that time the Government had not yet secured T-Mobile's records.  Weste argues that without these records the Government's case "would have been crippled."

On December 2, 2008, the Government filed a motion to compel T-Mobile to comply with the subpoena served upon it.  On December 16, the Court held a hearing on this motion and ordered T-Mobile to comply with the subpoena.   On February 13, 2009, T-Mobile filed additional briefing regarding the subpoena.  The reality is that on February 18, 2009, T-Mobile had not yet complied with the subpoena.  This Court was not going to burden either side – the

Government nor the Defendant – with the prospect of receiving crucial records just days prior to a March 16 trial date.  It was not unreasonable for trial defense counsel to seek and/or agree to a trial continuance.  In any event, this Court in the interests of justice would have granted any motion to continue the trial date.

8.  Failure to object to emails tendered as evidence

In his objections to the Magistrate Judge's Memorandum and Recommendation, Weste makes a mere reference to failure to object to emails without elaboration.  The recipients of the various emails testified about the emails they received.  Rule 901(a) provides that email evidence is admissible if authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "Authentication can be established in a variety of ways, including by 'testimony of [a] witness with knowledge ... that a matter is what it claimed to be[,]' Rule 901(b)(1), and by distinctive characteristics such as 'appearance, contents, substance, [or] internal patterns ... taken in conjunction with circumstances [,]' Rule 901(b)(4)." *United States v. Dumeisi*, 424 F.3d 566, 574 (7th Cir. 2005) (alterations in original). Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury. *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997).

Weste fails to show (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.

9.  Failure to object to 404(b) evidence

Prior to trial the court granted a motion in limine limiting evidence subject to Fed. R. Evid. 404(b).  At trial the Government asked various questions to Amanda and she testified that

in December 2005, Weste became angry with her because she would not go to his home and put up Christmas decorations.  Amanda testified that Weste picked her up causing her to strike her head on a door frame.

Weste now claims that his counsel were ineffective for failing to object to this assault because it was an extraneous offense.  The Magistrate Judge found, and this Court agrees, that this assault was intrinsic evidence.  This incident was relevant to demonstrating motive – Weste's infatuation with Amanda Stewart.

Even if an objection should have been made, there is no reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different.  Ms. Stewart testified that Weste did not intend to hurt her and that it was unintended for her head to hit the door frame.  Otherwise, given all the other evidence stated above, the result of the proceedings would not have been different.

## Conclusion

Weste's Motion to Vacate Sentence pursuant to 28 U.S.C. §2255 (docket no. 180) is denied.

A habeas petitioner must obtain a Certificate of Appealability (COA) before he may appeal from a district court's denial of his petition.  *See* 28 U.S.C. § 2253(c)(1).  When a district court denies relief on the merits of a claim, the petitioner must "demonstrate that reasonable jurists would find the ... court's assessment of the [claim] debatable or wrong."  *Coleman v. Thaler*, --- F.3d ----, 2013 WL 2264347 (5th Cir. 2013).     A COA is only warranted if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Byrom v. Epps,* Slip Copy, No. 11-70026, 2013 WL 1277086 (5th Cir. 2013).   Weste has not made the necessary showing.  A Certificate of Appealability is denied.

SIGNED this 11th day of June, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE